UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PERRY J. SCOTT,                                  Case No. 14-11500

             Plaintiff,                 George Caram Steeh
v.                                               United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                 Michael Hluchaniuk
                                                 United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 11, 12)**

## I.     PROCEDURAL HISTORY

    A.     Proceedings in this Court

On April 14, 2014, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge George

Caram Steeh referred this matter to the undersigned for the purpose of reviewing

the Commissioner's decision denying plaintiff's claim for a period of disability

and disability insurance benefits.  (Dkt. 3).  This matter is before the Court on

cross-motions for summary judgment.  (Dkts. 11, 12).  Plaintiff also filed a reply

in support of his motion.  (Dkt. 13).

B.    Administrative Proceedings

Plaintiff filed the instant claims on August 3, 2011, alleging that he became disabled on June 1, 2011.  (Dkt. 6-2, Pg ID 39).  The claim was initially disapproved by the Commissioner on December 19, 2011.  *Id*.  Plaintiff requested a hearing and on November 26, 2012, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Michael F. Wilenkin, who considered the case de novo.  In a decision dated January 17, 2013, the ALJ found that plaintiff was not disabled.  (Dkt. 6-2, Pg ID 39-46).  Plaintiff requested a review of this decision and on March 7, 2014, the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 25-30); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be

---

[1] In this Circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

**AFFIRMED**.

## II.    FACTUAL BACKGROUND

A.    <u>ALJ Findings</u>

Plaintiff was 53 years on the alleged onset date and 55 years old at the time of the hearing. (Dkt. 6-2, Pg ID 53). Plaintiff's past relevant work included work as a decontaminator, industrial cleaner, furniture mover/helper, and tree trimmer helper. (Dkt. 6-2, Pg ID 45). The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Dkt. 6-2, Pg ID 41). At step two, the ALJ found that plaintiff's cervical myelopathy with status post cervical discectomy and fusion were "severe" within the meaning of the second sequential step. (Dkt. 6-2, Pg ID 41). At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Dkt. 6-2, Pg ID 42). At step four, the ALJ found that plaintiff could not perform his previous work. (Dkt. 6-2, Pg ID 45). The ALJ concluded that plaintiff had the residual functional capacity to perform the full range of light work prior to September 17, 2012, when his age category changed from closely approaching advanced age to advanced age. (Dkt. 6-2, Pg ID 45). At step five, beginning on September 17, 2012, the date plaintiff's age category changed to advanced age, the ALJ found that there were no jobs that plaintiff could perform,

3

but before that date, plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 6-2, Pg ID 46).

B.    Plaintiff's Claims of Error

According to plaintiff, the ALJ failed to indicate anywhere in his decision that he considered the medical opinion by the state agency examiner, Dr. Leonidas Rojas.  Dr. Rojas examined plaintiff on November 29, 2011 and ultimately opined that the clinical evidence supported plaintiff's need for a walking aid and that plaintiff would fall without the use of a walking aid.  (Tr. 214).  Plaintiff contends that, for this reason alone, this matter must be remanded so that the ALJ can evaluate this medical opinion.  Plaintiff also asserts that the ALJ made an RFC finding that he could perform "light" work without considering the additional limitations as opined by Dr. Rojas.  Plaintiff further contends that this error is not harmless because the evidence is strongly suggestive that plaintiff may be limited to less than a light RFC and is potentially disabled under the medical vocational guidelines before age 55.

C.    Commissioner's Motion for Summary Judgment

According to the Commissioner, the ALJ discussed Dr. Rojas' opinions in detail:

> On November 29, 2011, the claimant attended a consultative evaluation conducted by Dr. Rojas. The claimant complained of difficulty with coordination and

4

balance, numbness in his right arm and leg, and that he
had a possible stroke in July 2011. The claimant
exhibited no tenderness of the lumbar spine, full range of
motion of the lumbar spine, no edema, intact fine and
gross manipulation, weak grip on the right, a steady gait,
decreased vibratory sensation on the right, mild
weakness on the right, but no tremors or spasticity. The
claimant also exhibited elevated blood pressure [Tr.
210–17].

Dr. Rojas diagnosed the claimant with severe untreated
hypertension, possible history of cerebral vascular
accident, and obesity [id.].

The objective clinical findings in the examination by Dr.
Rojas are given some  weight. However, the diagnosis of
probable cerebral vascular accident is given no weight as
there is no objective evidence corroborating this
diagnosis. Dr. Rojas relied entirely upon the claimant's
representation and not upon any objective medical
evidence. Moreover, the hospital records in July 2011 do
not indicate a diagnosis of cerebral vascular accident.

(Tr. 19). Thus, the Commissioner maintains that the ALJ adequately evaluated Dr.

Rojas' opinion.  Plaintiff also implies the ALJ did not notice Dr. Rojas' opined

cane requirement.  (Pl.'s Br. 6).  However, the Commissioner asserts that the ALJ

did note that Dr. Rojas found plaintiff had a "steady gait."  (Tr. 19, 211).  In his

opinion, Dr. Rojas said, "His gait is essentially steady, particularly without his

cane."  (Tr. 211).  The Commissioner argues, therefore, that it is easily inferred

that the ALJ considered Dr. Rojas' opinion on plaintiff's need for a cane.

The Commissioner also points out that plaintiff seems to dispute the ALJ's

5

finding that plaintiff could perform a full range of light work.  In support of this

finding, the ALJ noted, among other things, that Dr. Rojas opined Plaintiff had a

"steady" gait without a cane.  (Tr. 19, 211).  The ALJ also pointed to Dr.

Hinderer's opinion that plaintiff needed a cane for standing or walking, but also

that plaintiff was not limited to sedentary work.  (Tr. 20, 259).  Thus, according to

the Commissioner, the ALJ properly concluded that plaintiff could stand or walk

six hours in an eight hour workday, as required for "light work" under 20 C.F.R.

§ 404.1567(b) and this finding is supported by substantial evidence.

The Commissioner also argues that even if there were an error, plaintiff fails

to show harm from this alleged error, as he must for remand.  *See Shinseki v.*

*Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is

harmful normally falls upon the party attacking the agency's determination");

*Rabbers v. Comm'r of Soc. Sec*., 582 F.3d 647, 654 (6th Cir. 2009) ("Generally …

we review decisions of administrative agencies for harmless error").  The

Commissioner points out that the vocational expert cited 30,000 light jobs plaintiff

could do even if he needed "a cane for prolonged ambulation or prolonged

standing."  (Tr. 59).  Thus, even if plaintiff did need a cane, there were still many

light jobs he could do.  According to the Commissioner, adding the cane

requirement to the RFC would not have changed the outcome and any error was,

therefore, harmless.

6

D.    Plaintiff's Reply

In reply, plaintiff asserts that while the ALJ discussed Dr. Rojas' opinion in the decision, he failed to mention the specific medical opinion regarding plaintiff's need for a walking aid and that he would fall without it.  Plaintiff contends that these opinions are more than just mere "details" as the Commissioner contends.

## III.   DISCUSSION

A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec.

8

Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who

10

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his

> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

Generally, whether and to what extent a social security claimant requires the

use of a cane is important because it could erode the occupational base.  The

regulations provide guidance on making this case-specific determination:

> **Medically required hand-held assistive device:** To find
> that a hand-held assistive device is medically required,
> there must be medical documentation establishing the
> need for a hand-held assistive device to aid in walking or
> standing, and describing the circumstances for which it is
> needed (i.e., whether all the time, periodically, or only in
> certain situations; distance and terrain; and any other
> relevant information). The adjudicator must always
> consider the particular facts of a case. For example, if a
> medically required hand-held assistive device is needed
> only for prolonged ambulation, walking on uneven
> terrain, or ascending or descending slopes, the unskilled
> sedentary occupational base will not ordinarily be
> significantly eroded.
>
> Since most unskilled sedentary work requires only
> occasional lifting and carrying of light objects such as
> ledgers and files and a maximum lifting capacity for only
> 10 pounds, an individual who uses a medically required
> hand-held assistive device in one hand may still have the
> ability to perform the minimal lifting and carrying
> requirements of many sedentary unskilled occupations
> with the other hand. For example, an individual who
> must use a hand-held assistive device to aid in walking
> or standing because of an impairment that affects one
> lower extremity (e.g., an unstable knee), or to reduce
> pain when walking, who is limited to sedentary work

13

> because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

SSR 96-9p. Plaintiff's argument presumes that the need for a cane or other assistive device entirely precludes his ability to perform light work. This can be the case because a key component of all light jobs is the ability to stand and walk during most of the workday. According to the Commissioner's own policies, light work entails "a good deal of walking or standing," which is the "primary difference between sedentary and most light jobs." SSR 83-10. In order to be able to frequently lift or carry objects weighing up to 10 pounds, which is required to perform light work, an individual must be able to stand or walk, off and on, for approximately six hours out of an eight hour day.

In this case, however, the vocational expert specifically testified that there were 30,000 light jobs available that plaintiff could perform while using a cane for standing and walking. This case is easily distinguishable from *Jones v. Comm'r of*

14

*Soc. Sec.*, 2012 WL 967509, *5 (W.D. Mich. 2012), where the Court rejected the ALJ's finding that the plaintiff could perform light work, which by definition requires lifting up to 20 pounds, where the plaintiff's use of a cane could affect his ability to perform such work. *See e.g.*, *Love v. Commissioner of Social Security*, 605 F.Supp.2d 893, 907 (W.D. Mich. 2009) (court found that the ALJ's RFC determination was not supported by substantial evidence where the ALJ failed to address the illogical conclusion that a person can carry 20 pounds while using an assistive device; "[t]he Court does not doubt that Plaintiff can lift 20 pounds, but fails to comprehend how Plaintiff can carry 20 pounds if he requires a 'hand-held assistive device' to ambulate.").  In *Jones*, remand was required so that the Commissioner "could decide whether plaintiff needs to use a cane for ambulation, and if so, whether plaintiff can perform light work while using this assistive device." *Id*. at *5.  Here, however, the vocational expert has already provided testimony that plaintiff could perform a significant number of jobs in the light work category, *despite* the need to use a cane for standing and walking.

The instant case is much more like *McPherson v. Astrue*, 2012 WL 1552285, *11 (S.D. Ohio 2012), where the court concluded that the plaintiff had failed to show how his need to use a cane would have made any difference to the final disability determination.  In *McPherson*, the vocational expert testified that someone with the plaintiff's vocational characteristics could still perform a

15

number of jobs if limited to light work without use of his dominant hand for 50 percent of the workday due to the use of a cane. In light of this testimony, the court concluded that the plaintiff's alleged need for a cane was unpersuasive and, at best, indicates only harmless error. *Id.*, citing *Shinseki v. Sanders*, 556 U.S. 396 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009); s*ee also Jozelin v. Comm'r of Soc. Sec.*, 2013 WL 951034, *9 (E.D. Mich. 2013) (ALJ's failure to include need for a cane, which precluded light work, in the RFC was harmless error where the vocational expert testified that plaintiff could also perform a significant number of sedentary jobs available in the economy.). Under these circumstances, any error by the ALJ in failing to include plaintiff's need to use a cane for walking and standing is harmless because the vocational expert specifically testified that a significant number of jobs in the light work category were available for a person with plaintiff's RFC as stated by the ALJ *and* who needed to use a cane for walking and standing. Thus, a remand is not necessary.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may

17

rule without awaiting the response.

Date: July 6, 2015                          s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 6, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following:.

                                            s/Durene Worth
                                            Acting in the absence of
                                            Tammy Hallwood, Case Manager
                                            (810) 341-7887
                                            tammy_hallwood@mied.uscourts.gov